IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **4:CV-06-1698** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| LIEUTENANT WONELDORF, et al., | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

**I. Background.**

Plaintiff, Johnny Cyrus, formerly an inmate at the Federal Correctional Institution at Allenwood ("FCI-Allenwood")[1], Pennsylvania, filed, *pro se,* this *Bivens* action pursuant to 28 U.S.C. § 1331, on August 30, 2006. (Doc. 1).[2] Plaintiff has also filed an application for leave to proceed *in forma pauperis.* (Doc. 2).[3]

---

[1] After he filed this case, Plaintiff was transferred to FMC-Butner, North Carolina. (Doc. 20). All of Plaintiff's claims in this case occurred while he was confined at FCI-Allenwood.

[2] Plaintiff simultaneously filed two other actions with this Court on August 30, 2006, namely Civil Nos. 06-1665 and 06-1697, M.D. Pa.

[3] By separate Order, we granted Plaintiff's Motion for *in forma pauperis*. (Doc. 13).

Plaintiff originally named as Defendants, with respect to his *Bivens*[4] action, the unknown Clinical Director, Ralph Doe, Lieutenant ("Lt.") Woneldorf[5], and two unknown Correction Officers ("CO"), namely John Doe #1 and John Doe # 2, all individuals employed by the Federal Bureau of Prisons ("BOP") at FCI-Allenwood. (Doc. 1, p. 2). Plaintiff alleged that on July 13, 2005, the two John Doe CO's took his wheelchair under an order given by Lt. Woneldorf, and Plaintiff stated that he cannot "get around without my wheelchair because I had a stroke and a weak side from the stroke and paralized (sic) in one leg." (*Id*.). Plaintiff averred that one CO held him down in his bed, and that the other CO took his wheelchair out of his cell. Plaintiff stated that this taking was done deliberately. Plaintiff further averred that the prison medical staff refused to see him for a week or two, and that he was in severe pain, seemingly from a fall. Plaintiff did not state if the fall was the result of the CO's removal of his wheelchair from his cell. In any event, Plaintiff stated that after his fall, his wrist was badly swollen for two (2) or three (3) weeks and that he could not move it, and that he was not given medical care for his wrist for a few weeks. Finally, Plaintiff stated that the medical staff gave him a sling and ACE wraps. Plaintiff concluded that "when they show up in (SHU) Special Housing Unit Lieutenant Woneldorf order this to happen, to me; I am in a handicap for a reason, Lieutenant knows, I am handicap." (*Id*.).

---

[4]As this Court noted in *Oriakhi v. Wood*, 2006 WL 859543, * 1, n. 1. (M.D. Pa.).:

"In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized a private cause of action to recover damages against a federal agent for violations of constitutional rights."

[5]Defendants note that Plaintiff has misspelled Defendant Lt. Woneldorf's name and that the correct spelling is "Womeldorf." Doc. 26, p. 1, n. 1.

Plaintiff stated no claim against Defendant Ralph Doe, Clinical Director, either with respect to the taking of his wheelchair or with respect to the denial of medical care for his wrist injury for two (2) or three (3) weeks. There was no personal involvement alleged with respect to the stated Defendant. Plaintiff alleged that the two (2) John Doe CO's wrongfully took his wheelchair under an order from Defendant Lt. Woneldorf, despite the fact that the Lt. knew he was handicapped and needed his wheelchair to ambulate. (*Id*.).

As relief, Plaintiff sought compensatory damages of $200,000.00 "for cruel and unusual punishment, deliberate indifference, racial discrimination, pain and suffering, mental anguish." (*Id*., p. 3). Plaintiff attached to his Complaint a copy of a Memorandum dated January 24, 2006 from the BOP Regional Counsel, denying his Administrative Tort Clam he filed with the BOP under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 and § 2680, regarding his present claim that he was injured on July 13, 2005, when the staff at FCI-Allenwood took his wheelchair, and he fell while trying to use the bathroom. Plaintiff claimed that he suffered a broken left wrist and a knot on his head. Plaintiff also claimed that he did not receive adequate and timely medical treatment for his injuries. (Doc. 1, Att. 1).

In reviewing the Complaint under 28 U.S.C. §1915(e)(2)(B), we found that Plaintiff was unable to maintain his *Bivens* action against one of the named Defendants, *i.e.* Ralph Doe, Clinical Director. With respect to his Ralph Doe Defendant, Plaintiff did not allege any personal involvement necessary to name this unidentified BOP official as a Defendant. (Doc. 1, p. 2). We found that Plaintiff included the unnamed Ralph Doe Defendant based on *respondeat superior,* and stated that this was not permissible in a *Bivens* action. We found no claim of racial

3

discrimination under the Fourteenth Amendment as against any Defendant. We also found that Plaintiff's relief request for a specific amount of damages should be stricken. Further, we found no Eighth Amendment denial of medical care claim asserted against the remaining three (3) Defendants. Finally, we found that Plaintiff should be permitted to proceed with his Eighth Amendment conditions of confinement claim against Defendant Woneldorf and that the two (2) John Doe Defendants should be dismissed without prejudice. (Doc. 6).

On October 20, 2006, the District Court issued an Order and adopted, in full, our Report and Recommendation. (Doc. 12). Plaintiff's *Bivens* action only as against Defendant Lt. Woneldorf was allowed to proceed with respect to his Eighth Amendment claims. Subsequently, we issued an Order on October 26, 2006, in which we granted Plaintiff's *in forma pauperis* motion and directed service on Defendant Woneldorf. (Doc. 13). Summons was issued as to Defendant Woneldorf.

Also on October 26, 2006, Plaintiff filed a Supplement to his Complaint seeking to add CO Bower as a party Defendant. (Doc. 14). Plaintiff identified CO Bower as one of the John Doe Defendants mentioned in is original pleading who allegedly took his wheelchair under an order from Defendant Woneldorf. On November 7, 2006, we issued an Order directing the Clerk of Court to add CO Bower as a Defendant in this case. (Doc. 15). We also directed service of the Complaint and Supplement on Defendant Bower. Summons was issued as to Defendant Bower.[6]

---

[6] As Defendants note, while this Court denied Plaintiff's attempt to supplement his Complaint as to Ronald Laino, Laino is on the docket as a Defendant. (Doc. 26, p. 2, n. 3 and Doc. 15, p. 3). Thus, we have directed the Clerk of Court to remove Laino's name from the docket as a Defendant.

Defendants Woneldorf and Bower were both served. (Doc. 17).

On March 8, 2007, Defendants Woneldorf and Bower jointly filed a Summary Judgment Motion pursuant to Fed.R.Civ.P. 56(b). **(Doc. 23).** Defendants filed their support Brief and Statement of Material Facts ("SMF") with exhibits on March 22, 2007. (Docs. 26 and 27, respectively). Plaintiff filed his opposition Brief and exhibits, Exs. 1-3, on April 16, 2007. (Docs. 29 and 30, respectively).[7] Defendants Woneldorf's and Bower's Summary Judgment Motion is ripe for disposition.

## II. Section 1331 Standard.

Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992).

---

[7]Copies of Plaintiff's exact same opposition Brief and exhibits were captioned and filed in this case as well as three of his other cases pending before this Court, namely 06-1665, 06-2265 and 06-2051. We previously issued a Report and Recommendation in Case No. 06-2051 recommending that Defendant's Summary Judgment Motion be granted. On June 25, 2007, the District Court granted Defendant's Summary Judgment Motion. We will issue a separate Report and Recommendation with respect to Plaintiff's Case No. 06-2265.

In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992).

### III. Motion for Summary Judgment Standard.

The court may grant a motion for summary judgment if the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). An issue of fact is "`genuine' only if a reasonable jury, considering the evidence presented, could find for the nonmoving party." *Childers v. Joseph*, 842 F.2d 689, 693-694 (3d Cir. 1988) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

The burden of proving that there is no genuine issue of material fact is initially upon the movant. *Forms, Inc. v. American Standard, Inc.*, 546 F. Supp. 314, 320 (E.D. Pa. 1982), *aff'd mem.* 725 F.2d 667 (3d Cir. 1983). Upon such a showing, the burden shifts to the nonmoving party. *Id*. The nonmoving party is required to go beyond the pleadings and by affidavits or by "depositions, answers to interrogatories and admissions on file" designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White v. Westinghouse Electric Company*, 862 F.2d 56, 59 (3d Cir. 1988). In doing so, the court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id*., *quoting Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir. 1985), *cert. denied,* 474 U.S. 1010 (1985); *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573

(3d Cir. 1976) *cert. denied*, 429 U.S. 1038 (1977).

Under Rule 56 summary judgment must be entered where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. Material Facts.

Since, as stated, Defendants have filed their SMF in support of their Summary Judgment Motion (Doc. 27, ¶'s 1.- 26.), and all of their facts are properly supported by citation to the BOP regulations and to evidence, we shall adopt as our own all of Defendants' facts contained in their SMF that are supported by citation to evidence and that are not disputed by Plaintiff in his opposition Brief and through his evidence, *i.e.* his Exhibits 1-3. (Docs. 29 and 30). To the extent, if any, that Plaintiff's evidence disputes Defendants' facts detailed in their SMF, we shall not adopt Defendants' facts as our own.[8] We find that Plaintiff, in his response to Defendants' SMF contained in his Brief (Doc. 29), has not properly responded, paragraph by paragraph, to any of Defendants' SMF as required by Local Rule 56.1 of M.D. Pa. (Doc. 18).[9] As stated, Defendants have offered evidentiary support for their stated factual paragraphs contained in their SMF. (Doc. 27, pp. 1-5).

---

[8] As discussed below, we do not find that any of Plaintiff's exhibits, Exs. 1-3, dispute Defendants' SMF and his evidence. (Doc. 30). Rather, Plaintiff's exhibits are articles addressing alleged abuses by the BOP against other inmates in other prisons and they have nothing to do with Plaintiff and his claims in this case.

[9] Plaintiff is deemed as being well aware of all of the Local Rules of this Court based on his several cases he has filed in the M.D. Pa. In fact, in his Brief (Doc. 29), Plaintiff only responds to ¶'s 1.- 5. of Defendants' SMF. Indeed, his Brief does not contain any legal argument and does not even respond to Defendants' remaining ¶'s of their SMF, ¶'s 6.- 26., Doc. 27.

Defendants have shown that Plaintiff did not fully and properly exhaust his BOP administrative remedies with respect to the stated Eighth Amendment claims against them. Since Defendants' SMF's are supported by evidence and since Plaintiff has not properly responded to them, we shall accept all of Defendants' SMF's as undisputed. We shall incorporate them all herein by reference and shall not repeat them herein. (Doc. 27, pp. 1-5).

In his Brief, as noted, Plaintiff responds only to ¶'s 1.-5. of Defendants' SMF regarding the BOP Administrative Remedy process. Plaintiff does not respond to Defendants' SMF as to its statements that Plaintiff failed to properly exhaust his Administrative remedies with respect to his present claims. Plaintiff simply states that the BOP administrative remedy "procedure is a joke." (Doc. 29, p. 1, ¶ 1.). Plaintiff does not dispute Defendants' SMF and its statements that all of the four (4) Administrative remedies Plaintiff filed after the July 13, 2005 incident alleged in this case, that may have been relevant to Defendants' alleged conduct, were rejected due to Plaintiff's improper filing of them.[10] (Doc. 27, pp. 3-5). Rather, Plaintiff questions the appropriateness of the rejections he received from the prison and the BOP Regional Director, which stated that the matters

---

[10] Defendants' SMF shows that Plaintiff filed a total of ten Administrative remedies after the date in question, but that six of these remedies could not have involved Plaintiff's Eighth Amendment claims made against Defendants Woneldorf and Bower. (Doc. 27, p. 3, ¶'s 11.-14.). Only four of the stated ten Administrative remedies involved staff conduct at FCI-Allenwood. In their SMF, Defendants note that the specific staff conduct which was the subject of Plaintiff's four (4) stated Administrative remedies is not known, since actual copies of rejected Administrative remedies are not maintained. Defendants' evidence supports this claim. (Doc. 27, p. 4, n. 1 & p. 5 n. 2 and n. 3 and Ex. 1, ¶'s 11., 13. & 17.). However, Defendants have established through their evidence that the stated four (4) administrative remedies Plaintiff filed after the July 2005 incident are the only possible ones that could relate to Plaintiff's claims asserted in this case.

raised in his administrative remedies were not sensitive. Plaintiff claims that, since he alleged assaults, threats and harassment by prison staff, his administrative remedies were sensitive matters. (Doc. 29, p. 3). Thus, Plaintiff argues that his Administrative remedies claiming threats and assaults should not have been rejected by the Regional Office, as they undisputedly were rejected, since they were sensitive issues. (*Id*.). Significantly, Plaintiff does not dispute Defendants' evidence which shows that he never properly re-filed any of his four Administrative remedies. Further, Plaintiff clearly had a recourse with respect to his four rejected administrative remedies, *i.e.*, to properly re-file them, but he did not do so. (Doc. 27, pp. 3-5).

Plaintiff also states that he has been retaliated against by BOP staff members that he has filed Administrative remedies against and filed civil actions against. (Doc. 29, pp. 1-2). Plaintiff states that unnamed staff members "make your Administrative remedys (sic) disappear and you hear nothing at all about it". Plaintiff states that he indicated on his civil actions that his Administrative remedies were never answered because BOP staff never filed them. He states that he went "to the next level outside of jail for help and they rejected it at that level." He states that prison staff are "not going to let you file on they (sic) friends" in the prison. Plaintiff states that "Administrative remedys (sic) should be run by inmates or an outside agency so it will be filed." (*Id*., p. 2).

In his Brief, Plaintiff concludes that the BOP Administrative Remedy process "is a very corrupt BOP system." (*Id*., p. 4).

Significantly, Plaintiff does not state in his Brief if any of his four (4) rejected Administrative remedies he received from the prison and the Regional Office raised his Eighth Amendment claims he asserts against Defendants in this case. Nor does Plaintiff state that any of his Administrative

remedies which allegedly disappeared and were not filed by staff involved his claims against our Defendants.  Further, Plaintiff does not implicate Defendants with any alleged improper handling and failing to file his Administrative remedies.  Moreover, Plaintiff does not dispute Defendants' evidence which shows that he was instructed how to properly proceed with respect to his rejected administrative remedies, and that he failed to properly re-file them.  (Doc. 27, pp. 3-5).

Consequently, we accept as undisputed Defendants' SMF's and find that they are all supported by evidence.  We find that it is undisputed that, of the four (4) possible Administrative remedies which may have raised Plaintiff's instant claims that Plaintiff filed after the alleged incident in this case, none were properly filed and none were exhausted.  Nor does Plaintiff's evidence, Exs. 1-3 (Doc. 30), contest Defendants' SMF.  Plaintiff's exhibits are copies of three articles about other inmates in the custody of the BOP, at other prisons, and relate to the BOP staff's alleged poor treatment of these other inmates.  None of Plaintiff's exhibits deal with Plaintiff's alleged mistreatment by BOP staff, and none of his exhibits controvert our Defendants' SMF's, which show that Plaintiff did not exhaust his Administrative remedies with respect to his present Eighth Amendment claims against Defendants.  Thus, we find Plaintiff's exhibits to be irrelevant to this case and find that they do not contest Defendants' evidence. Therefore, we accept all of the stated facts contained in Defendants' SMF (Doc. 27, ¶'s 1.-26.) since they are supported by evidence, and since they are not controverted by Plaintiff's response to Defendants' SMF or by his evidence (*i.e.*, his three (3) Exhibits).  We will adopt Defendants' SMF's as our own herein.  *See U.S. ex rel. Paranich v. Sorgnard*, 396 F. 3d 326, 330, n. 5 (3d Cir. 2005) (under M.D. Pa. L.R. 56.1, the Third Circuit noted that the District Court adopted all the facts of one party that were not clearly disputed by the

other party with sufficient citation to the record).[11]  Therefore, we adopt the following undisputed facts derived from Defendants' SMF (Doc. 27) as our own and incorporate them herein by reference:  Paragraphs 1.- 26.

As stated, while Plaintiff generally argues that his Administrative remedies regarding assaults, threats and harassment by staff should not have been rejected by the Regional Office as non-sensitive issues, he does not show that any of these Administrative remedies related to the unconstitutional conduct he alleges against Defendants in this case.  Nor does Plaintiff explain why he did not properly re-file any of the stated Administrative remedies after he was undisputedly advised and instructed as to how to properly re-file them.

**V. Discussion.**

As we have repeatedly noted in our prior Reports and Recommendations when screening Plaintiff's cases, and as Defendants point our in their Brief (Doc. 26, pp. 7-8), it is well-settled that the Plaintiff must exhaust his administrative remedies prior to filing a civil rights suit.  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including § 1983 actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Id.; Woodford v. Ngo,* 126 S Ct. 2378 (2006); *Fortune v. Bitner*, 2006 WL 2769158, *7 (M.D. Pa.)("The PLRA mandates that inmates 'properly' exhaust administrative remedies before

---

[11]*See also Paranich* District Court case at 286 F. Supp. 2d at 447, n. 3.

11

filing suit in federal court.")(citation omitted).  Further, the Defendant has the burden to plead exhaustion as an affirmative defense.  *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002); *Fortune v. Bitner*, 2006 WL 2769158, *7.

We find that Defendants have met their burden and have shown that Plaintiff's Eighth Amendment claims against them, which arose in July 2005, were not properly exhausted. Defendants have shown that Plaintiff did not pursue all of his available BOP administrative remedies before he filed this action.  Indeed, Plaintiff is well aware of the PLRA exhaustion requirement based on our screening of his prior cases he has filed with this Court.

Since Defendants have correctly stated the BOP Administrative Remedy process in their Brief (Doc. 26, pp. 3-4), and since their evidence has detailed it (Doc. 27, Ex. 1, ¶'s 6.-9.), we shall not repeat it herein.  Further, Plaintiff does not dispute the BOP Administrative Remedy process as outlined in Defendants' Brief.  As stated, Plaintiff only questions why his unspecified Administrative remedies were rejected by the Regional Office as not being sensitive when he states they involved assaults and threats by unnamed staff.  While Plaintiff does not show that any of the rejected Administrative remedies had anything to do with his claims against our Defendants, he still had available recourse with respect to his four (4) stated Administrative remedies, according to Defendants' undisputed evidence, in that he could have re-filed them properly as he was instructed to do.  Thus, we find that, to the extent that Plaintiff is construed as arguing futility with respect to the exhaustion of his claims against Defendants, this contention should not be found to excuse Plaintiff's undisputed failure to exhaust his Administrative remedies.  As stated, Plaintiff has offered no reason or evidence as to why he did not properly re-file his Administrative remedies after he was

advised and instructed how to do it. In any event, as stated below, the PLRA bars a futility exception to the exhaustion requirement. *See Fortune, supra* at * 7.

As Defendants recognize, pursuant to *Spruill*, "[a] procedural default by the prisoner, either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." (Doc. 26, p. 8). As this Court stated in *Fortune v. Bitner*, 2006 WL 2796158, * 7 (M.D. Pa.):

> Under the Prison Litigation Reform Act ("PLRA"), exhaustion of administrative remedies is required for all actions concerning prison conditions brought under federal law. *See* 42 U.S.C. § 1997e(a); *see Woodford v Ngo*, 126 S.Ct. 2378 (2006). The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516 (2002). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 126 S.Ct. at 2387 (internal quotation and citation omitted). "The benefits of exhaustion can be realized only if the prison grievance system si given a fair opportunity to consider the grievance." *Id*. at 2388.
>
> The PLRA mandates that inmates "properly" exhaust administrative remedies before filing suit in federal court. *Id*. at 2387. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id*. at 2386. Failure to substantially comply with the procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. *Spruill v. Gillis*, 372 F.3d 218, 227-32 (3d Cir. 2004). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2002).

The *Fortune* Court also stated:

> The PLRA's exhaustion requirement was designed to reduce the quantity and improve the quality of prisoner lawsuits, as well as afford corrections officials an opportunity to address complaints internally before allowing the initiation of a federal suit. *Woodford*, 126 S.Ct. at 2387-88 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). The PLRA exhaustion requirement is satisfied if the Plaintiff files a grievance and appeals the denial of the grievance to the highest level possible, giving the prison "fair notice" of the claim and an opportunity to remedy it. To provide fair notice of a claim, the plaintiff must allege specific acts of mistreatment or misconduct and identify the responsible party or parties. *See Pack v. Martin*, 174 Fed. Appx. 256 (6th Cir. 2006); *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003). Although neither the Third Circuit Court of Appeals nor the Supreme Court has defined how specific an inmate's administrative grievance must be to place the prison on "fair notice" of a claim prior to pursuing it in federal court, the Supreme Court has held that the prisoner's compliance with the agency's applicable administrative remedy process should be the yardstick for making such an assessment. *Woodford*, 126 S.Ct. at 2386; *Spruill*, 372 F.3d at 227-32.

*Id.*, * 9.

We agree with Defendants (Doc. 26, pp. 9-10), and find that, based on the undisputed evidence Plaintiff did not exhaust his Eighth Amendment claims he asserts in this case. Defendants have established, through their uncontested evidence, that Plaintiff has failed to exhaust any of the four (4) possible administrative remedies he filed regarding his claims in this case. Thus, we shall recommend that Defendants' Summary Judgment Motion be granted.

**VI. Recommendation.**

Based on the above, it is respectfully recommended that Defendants' Summary Judgment Motion **(Doc. 23)** be granted since Plaintiff has failed to exhaust his claims under the Eighth

Amendment against both Defendants. It is further recommended that Judgment be entered in favor of Defendant Woneldorf and Defendant Bower and against Plaintiff.

                                      **s/ Thomas M. Blewitt**
                                      **THOMAS M. BLEWITT**
                                      **United States Magistrate Judge**

**Dated: July 6, 2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHNNY CYRUS, | : | CIVIL ACTION NO. **4:CV-06-1698** |
| Plaintiff | : | (Judge McClure) |
| v. | : | (Magistrate Judge Blewitt) |
| LIEUTENANT WONELDORF, et al., | : | |
| Defendants | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **July 6, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

                                                                   **s/ Thomas M. Blewitt**
                                                                   **THOMAS M. BLEWITT**
                                                                   **United States Magistrate Judge**

**Dated: July 6, 2007**